**Clayvell Daundre RICHARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–90–00895–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 16, 1992.

James M. Leitner, Houston, for appellant.

Linda A. West, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Clayvell Daundre Richard, appeals his judgment of conviction for capital murder. Tex.Penal Code Ann. § 19.03 (Vernon 1989). The jury rejected appellant's not guilty plea and assessed punishment at life confinement in the Institution-al Division of the Texas Department of Criminal Justice. Appellant assigns six points of error, four based on insufficiency of the evidence, one based on failure to give the jury an instruction that appellant was not required to prevent a homicide, and the final point based on failure to grant mistrial after the prosecution asked a highly improper and inflammatory question during cross-examination. We affirm.

On May 23, 1989, around 9:00 p.m., appellant, James Woody Foster, and Robert Gandy drove to the Fajita Junction Restaurant on Holcombe in Houston. Appellant had been working in the restaurant just a month before. Gandy remained in the car while appellant and Foster entered the backdoor of the restaurant.

Shonette Martin, the manager, was on the telephone, and Phillip Griffin, the cook, and Rhonda Robinson were cleaning up when the two men came in. Appellant knew both Shonette Martin and Phillip Griffin. Rhonda Robinson, who did not know appellant or Foster, saw them come in the back and go into the restrooms. Since customers normally enter the front door, she thought this was odd and asked Shonette if they knew who they were. Shonette merely told Phillip to close the door while she remained on the phone.

Griffin closed the door to the food preparation area and Foster immediately grabbed him from behind. With a gun in his other hand, Foster put it against Griffin's head and ordered Martin to get off the phone and open the safe. Appellant pointed a pistol at Rhonda Robinson's face and ordered her to get on the floor. While appellant stood over Robinson with his weapon, Foster continued to threaten Martin. Robinson heard Foster tell Martin that he would give her two seconds to open the safe. Martin got down on her knees trying to open the floor safe. Foster told her to hurry up or he would kill everyone. She said she needed some time, and appellant said to Foster, "Give her some time, Man, because she's scared." Then Foster said, "Two more seconds to open the safe or I'm going to kill everybody." Robinson was then shot and passed out.

Appellant picked up a white bank bag off the counter next to the cash register. This was the only thing taken in the robbery. After the shooting, appellant and Foster got back into the car with Gandy and left. In the car they opened the bank bag and discovered it only contained $30.00. Appellant took a $10.00 roll of quarters, Gandy took a $10.00 bill and Foster took ten ones.

The murder weapons were thrown into a reservoir near Highway 6 and Interstate Highway 10. When Ms. Robinson regained consciousness, her hand was draped over Phillip Griffin's leg. There was blood everywhere. Griffin was dead—shot in the head. Shonette Martin lay motionless on top of the floor safe. Despite her own injuries, Robinson dialed 9-1-1. She had been shot in the right jaw, her skull was cracked, and she had been shot in the right hand.

About a week after the murder, a warrant was issued for appellant's arrest. Attempts to locate appellant were made. Appellant was finally brought to the homicide department by his step-father, mother and uncle. After having been given his Miranda warnings by Sergeant Ladd, as well as by a district judge, he gave a written statement which was admitted into evidence.

In his statement, appellant stated he and Foster went into the restaurant to rob it. They both carried handguns. He asserted Foster did all the shooting, and that the gun he carried that night had no trigger. He admitted to taking the money in this robbery and receiving ⅓ of the robbery proceeds. Appellant directed the investigating officers to the location where the weapons had been discarded. A revolver was recovered and submitted to H.P.D. firearms examiner, C.E. Anderson. He determined that the bullet recovered from Griffin's brain had been fired from that revolver. As a result of being shot in the head, Robinson lost ½ of the hearing in her right ear and at trial she still had bullet fragments in her skull and right jaw. She testified her balance is off, that she lost nerves in her right arm and suffered from seizures.

Martin was also shot in the head. She lost the ability to function as an adult. She could no longer read or write and she walked and talked as a small child. The record reflects that she was present in the court room in a wheel chair during this trial.

In his first three points of error, appellant argues that the evidence was insufficient to support a conviction for capital murder because: 1) the record failed to show he personally shot Phillip Griffin or used any force against Shonette Martin; 2) the jury was restricted to convicting appellant only if they found appellant committed the underlying robbery and the undisputed evidence showed appellant was liable for the robbery only as a party; and, 3) the State failed to show appellant intended for the co-defendant, Foster, to cause the death of the complainant, Phillip Griffin. The critical inquiry in reviewing sufficiency of the evidence to support a conviction is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the reviewing court is not to act as a thirteenth juror in assessing the evidence. Rather, it is to act as a final safeguard insuring the rationality of the fact finder. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■ In appellant's first point of error, appellant argues that the evidence was insufficient for capital murder as a principal, because there was no evidence to show appellant personally shot Phillip Griffin or used force against Shonette Martin. Appellant appears to be arguing that since appellant was charged with capital murder, the language of Tex.Penal Code Ann. § 19.02(a)(2) requires that the State prove appellant was the principle actor who murdered Griffin in the course of committing the robbery. The court of criminal appeals has repeatedly announced that the law of parties announced in sections 7.01 and 7.02 of the Penal Code is applicable to capital murder cases. *Crank v. State*, 761 S.W.2d

328 (Tex.Crim.App.1988), *cert. den.*, 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989); *English v. State*, 592 S.W.2d 949 (Tex.Crim.App.1980), *cert. den.*, 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120; *Livingston v. State*, 542 S.W.2d 655 (Tex.Crim.App.1976), *cert. den.*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). The jury charge authorized appellant's conviction of capital murder under the law of parties. The court instructed the jury in pertinent part as follows:

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense. Before you would be warranted in convicting the defendant, Clayvell Daudre Richard of capital murder, you must find from the evidence beyond a reasonable doubt not only that on the occasion in question the defendant was in the course or committing or attempt to commit the felony offense of robbery of Shonette M. Martin, as defined in this charge, but also that during the commission of the robbery or attempted commission thereof, if any, either the defendant shot Phillip Griffin with the intention of thereby killing him, or the defendant, Clayvell Daudre Richard, with the intent to promote or assist the commission of the offense of murder, if any, solicited, encouraged, directed, aided, or attempted to aid James Wood Foster and/or Robert Gandy in shooting Phillip Griffin with the intention of thereby killing him. Unless you find from the evidence beyond a reasonable doubt that the defendant, on said occasion, specifically intended to cause the death of the said Phillip Griffin

when he shot him, if he did shoot him, or if he solicited, encouraged, directed, aided, or attempted to aid James Woody Foster and/or Robert Gandy when one or both of them did shoot Phillip Griffin, if either of them did, you cannot convict him of the offense of capital murder.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of May, 1989, in Harris County, Texas, the defendant, Clayvell Daudre Richard, did then and there unlawfully while in the course of committing or attempting to commit the robbery of Shonette M. Martin, intentionally cause the death of Phillip Griffin, by shooting Phillip Griffin, with a deadly weapon, namely, a firearm; or if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of May, 1989, in Harris County, Texas, James Woody Foster and/or Robert Gandy did then and there unlawfully while in the course of committing or attempting to commit the robbery of Shonette M. Martin, intentionally cause the death of Phillip Griffin, with a deadly weapon, namely a firearm, and that the defendant, Clayvell Daudre Richard, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid James Woody Foster and/or Robert Gandy to commit the offense, if he did, then you will find the defendant guilty of capital murder as charged in the indictment and the foreman shall enter his signature in the designated space below the phrase: "We, the jury, find the defendant, Clayvell Daudre Richard, guilty of capital murder, as charged in the indictment."

As a result of this charge, which the court had authority to supply to the jury, there is no merit to appellant's argument that there was insufficient evidence for appellant's conviction as a principal, since his conviction as a principal was not required.

▋ Even if there was merit to appellant's argument, there was sufficient evidence which, when viewed in the light most favorable to the prosecution, a rational tri-

er of fact could find beyond a reasonable doubt that appellant was guilty as a principle to Griffin's murder. Appellant admittedly carried a handgun into the restaurant. He used it during the robbery to subdue Robinson. Robinson didn't know who shot first or who shot her or anyone else. Robinson testified Foster had his pistol to Griffin's temple, but the assistant medical examiner testified Griffin was shot in the back of the head from a distance of more than a few inches. Appellant led officers to the location of the murder weapon, a revolver. Appellant admitted that he took his ⅓ share of the crime proceeds after all the victims had been shot in the head. Appellant had a reason to kill Griffin and Martin that James Woody Foster did not have, namely, the victims knew him. Appellant's written statement contains the following:

> When we went in, Shonette; who I call Shawn; was on the phone, Phillip was cooking fajitas on the grill and there was another girl there that I did not know ... Shawn did not say anything to me. I know she recognized me, but she didn't say anything to me. Phillip also knew who I was but he also didn't say anything to me.

The only evidence that appellant did not fire his weapon and that his gun was non-functional consisted of his own self-serving statements. In his written confession, appellant asserted:

> The gun I had was a .380 automatic which had a broken trigger. There wasn't any trigger on it at all. It was a chrome gun.

During the trial, appellant described the gun in the following terms:

[DEFENSE COUNSEL]: What sort of gun did you get?

[APPELLANT]: It was an automatic gun. It was like an automatic .380.

[DEFENSE COUNSEL]: What kind of condition was it in?

[APPELLANT]: The trigger was broke and it didn't have a clip in it. The handle face was broken off.

[DEFENSE COUNSEL]: When you say it didn't have a clip in it, the gun was not loaded?

[APPELLANT]: It wasn't loaded.

Appellant's trial testimony about the gun he carried into the restaurant was different from what he put in his written confession. He added that the handle face had been broken off and the gun was not loaded, a rather significant fact if it was true. The jury was certainly not obliged to believe this self-serving statement about the non-functional status of the gun. The well established rule is the jury is the judge of the credibility of the witnesses and can choose to believe some, all or none of the testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). There was sufficient evidence to support appellant's conviction, both under the law of parties and as a principal. Appellant's point of error one is overruled.

█ In appellant's point of error two, appellant contends there was insufficient evidence to support a conviction of capital murder, because the court's charge to the jury required them to find that appellant personally committed the underlying offense of robbery and the record failed to establish that fact. We disagree. There were facts, which viewed in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that appellant was a primary actor in the robbery or attempted robbery of Shonette Martin.

The robbery statute reads:

A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:

　　*　　*　　*　　*　　*　　*

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

TEX.PENAL CODE ANN. § 29.02(a) (Vernon 1989).

Appellant admitted that he went into Fajita Junction on the night of the murder for the express purpose of robbing Shonette

Martin with a firearm. He testified he took the bank bag which contained the only money taken in the robbery. He carried a gun furnished by Gandy and exhibited that gun during the commission of the offense. Both appellant and Foster carried firearms as they burst into the food preparation area of the restaurant where the three employees were located. These were circumstances from which any rational trier of fact could find beyond a reasonable doubt that appellant threatened and placed Shonette Martin in fear of imminent bodily injury or death in the course of committing theft. The fact that Martin was not able to personally attest to this fact is of no significance. Appellant's point of error two is overruled.

 In appellant's third point of error he challenges the sufficiency of the evidence to support a conviction under the law of parties because, as he states it, "the State failed to show that the appellant intended for the co-defendant, Woody Foster, to cause the death of the complainant Phillip Griffin." In support of appellant's contention that the State had the burden of proving appellant intended Foster to kill Griffin, appellant cites *Kinnamon v. State*, 791 S.W.2d 84 (Tex.Crim.App.1990). However, *Kinnamon* did not involve the law of parties. Kinnamon was the sole actor in the death of Longmeyer. In the present case, the State did not have to prove that appellant intended for Foster to cause Griffin's death. The evidence was sufficient to show that appellant acted with intent to promote or assist in the commission of the offense by soliciting, encouraging, directing, aiding or attempting to aid Foster in its commission. This was the correct standard of criminal intent under the law of parties set out in TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974). Although it was framed in terms of the trial court's refusal to give a requested jury instruction, the same argument made by appellant was rejected by the Fort Worth Court of Appeals in *Carruth v. State*, 762 S.W.2d 364, 367 (Tex.App.—Fort Worth 1988, no pet.).

 As pointed out previously, the jury charge authorized a conviction for cap-

ital murder both as a primary actor and as a party. In determining whether the accused was a party to an offense, the court may examine the events occurring before, during and after the commission of the crime. *Moore v. State*, 804 S.W.2d 165, 166 (Tex.App.—Houston [14th Dist.] 1991, no pet.); *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App.1987). Circumstantial evidence may be sufficient to show that one is a party to an offense. *Beardsley v. State, supra.*

In the instant case it was appellant who had worked in the restaurant just a month before, knew Shonette Martin was the manager, knew Phillip Griffin, and knew the location of the safe. According to his own admission, Foster had never worked there. Appellant entered the restaurant with a handgun for the purpose of committing a robbery. He knew Foster was also carrying a firearm and intended to commit a robbery. He used and exhibited his weapon inside the restaurant to subdue the employees. After the shooting, he carried the money out of the restaurant and got back into Gandy's car with Foster. He was with Foster when they got rid of the murder weapon. These are the facts from which the jury was authorized to find that appellant was a party to Griffin's murder. *See Henry v. State*, 738 S.W.2d 332, 333–34 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). Appellant's point of error three is overruled.

 In appellant's fourth point of error, appellant restates his third point of error but asserts the evidence was factually insufficient. Appellant bases his argument on *Meraz v. State*, 785 S.W.2d 146 (Tex. Crim.App.1990). Nevertheless, the standard for review announced in *Meraz* applies only to situations in which a defendant has a burden of proof by a preponderance of the evidence. *Id.* at 155 ("when the courts of appeals are called upon to exercise their fact jurisdiction, that is, examine whether the appellant proved his affirmative defense or other fact issue where the law has designated that the *defendant has the burden of proof by a preponderance of the evidence*, the correct standard of

review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust.") (emphasis added). Appellant did not raise an affirmative defense in the present case, nor did he raise anything which would have been his burden to prove by a preponderance of the evidence. Therefore, the *Meraz* standard does not apply. *See Coleman v. State,* 804 S.W.2d 563, 565 (Tex.App.—Houston [14th Dist.] 1991, no pet.); *Brown v. State,* 804 S.W.2d 566, 571 (Tex.App.—Houston [14th Dist.], pet. ref'd); *Marsh v. State,* 800 S.W.2d 607, 610 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd); *Hunter v. State,* 799 S.W.2d 356, 358 (Tex.App.—Houston [14th Dist.] 1990, no pet.); *Gaynor v. State,* 788 S.W.2d 95, 97 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). To allow an appellate court to review the proof of the elements of an offense on a great weight and preponderance of the evidence standard rather than on the beyond a reasonable doubt standard would actually lessen the State's burden which is impermissible. *See Proctor v. State,* 767 S.W.2d 473, 474 (Tex.App.—Dallas 1989, pet. ref'd) ("Any statutory scheme which serves to shift the state's burden of proving each essential element beyond a reasonable doubt is constitutionally suspect."); *Robbins v. State,* 717 S.W.2d 348 (Tex.Crim.App.1986) (Use of instruction that caused state's burden on causation to lessen was reversible error); *Robinson v. State,* 596 S.W.2d 130, 132 (Tex.Crim.App.1980) (instructions to the jury that authorize any diminution in the state's burden of proof are fundamentally erroneous). Because the great weight and preponderance of the evidence standard does not apply to the instant case, appellant's fourth point of error is overruled.

■ In appellant's fifth point of error, appellant contends the trial court erred by refusing to give the jury an additional instruction in response to a jury note that appellant was not required under the law to prevent a homicide. The record reflects that during deliberations on guilt, the jury sent out a note which, among other things, asked for "clarification on the difference of failing to stop vs. intent to aid." The trial judge answered the jury's question with the instruction, "Please refer to the court's charge." Appellant argues that he was not under a statutory duty to prevent Foster from killing Griffin and, therefore, could not be held criminally liable for his failure to act under Tex.Penal Code Ann. § 601(c) (Vernon 1974) (a person who omits to perform an act does not commit an offense unless a statute provides that the omission is an offense or otherwise provides that he has a duty to perform the act). Appellant argues that failing to advise the jury of that statement of law was error, because the jury must have been concerned whether appellant could be liable for failing to prevent the homicide versus aiding in the offense.

The jury charge authorized the jury to convict appellant of capital murder only if they found beyond a reasonable doubt that either he intentionally caused the death of Griffin by shooting him with a firearm himself, or he acted with the intent to promote or assist the commission of the offense of murder by soliciting, encouraging, directing, aiding or attempting to aid Foster and/or Gandy in shooting Phillip Griffin. Unless they found beyond a reasonable doubt that appellant acted with such intent, they were instructed to acquit him of capital murder. Therefore, there was no necessity for an additional instruction that appellant did not have an affirmative duty to prevent a crime. If the jury believed that appellant did not have either the specific intent to cause Griffin's death himself or the intent to promote or assist the commission of that offense by another person, whether or not he did anything affirmative to prevent it, they had to find him not guilty. The charge given was the correct statement of the law. There was, therefore, no harm in refusing the requested charge. Appellant's point of error five is overruled.

■ In appellant's sixth point of error, appellant urges that the trial court erred in overruling his motion for mistrial because the prosecutor's first question to him on cross-examination was highly improper and

inflammatory. The question to which appellant refers was asked in the following context during the guilt stage of trial:

[DEFENSE COUNSEL]: Are you sorry that this happened?

[PROSECUTOR]: I would object. It is improper as to whether he was sorry. That's an improper question.

[THE COURT]: Overrule the objection.

[DEFENSE COUNSEL]: Are you sorry that this happened, Clayvell?

[APPELLANT]: Yes, sir, I am. I didn't mean for anybody to get hurt.

[DEFENSE COUNSEL]: I'm not asking you if you're sorry this happened because you're sorry you're in jail. I know you're sorry you're in jail but you are telling this jury that you are sorry Shonette is in that wheel chair and that Phillip Griffin is death? Are you telling the jury that?

[APPELLANT]: Yes, sir, I am.

[DEFENSE COUNSEL]: Pass the witness.

[PROSECUTOR]: *If you're so sorry, why didn't you take the gun and blow you're brains out?*

[DEFENSE COUNSEL]: I would object. I would ask that this be stricken and the jury be instructed to disregard.

[THE COURT]: Sustained. The jury is instructed to disregard the last question.

[DEFENSE COUNSEL]: I would move for a mistrial.

[THE COURT]: Denied.

■ Any error in the unanswered question was cured or rendered harmless by the court's instruction to disregard. *See Ransom v. State*, 789 S.W.2d 572, 585–86 (Tex. Crim.App.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990); *Maddox v. State*, 591 S.W.2d 898, 903 (Tex. Crim.App.1979), *cert. denied,* 447 U.S. 909, 100 S.Ct. 2994, 64 L.Ed.2d 859 (1980). It injected no new facts into the trial. Appellant doesn't argue in his brief that he has been harmed by the question. To cause reversal the question asked must be obviously harmful to appellant. *Ransom, supra,* at 585. None of the authorities cited in appellant's brief call for reversal of the conviction based on this. In fact, they all

stand for the proposition that an instruction to disregard generally cures error. Appellant's point of error six is overruled.

Accordingly, the judgment of the trial court is affirmed.