Opinion issued June 28, 2002





 





 


In The 

Court of Appeals

For The

First District of Texas






NO. 01-00-00584-CV






FORMOSA PLASTICS CORPORATION, U.S.A., AND FORMOSA PLASTICS
CORPORATION, TEXAS, Appellants & Cross-Appellees


V.


MATERIAL PARTNERSHIPS, INC., Appellee & Cross-Appellant






On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 9736829





 

O P I N I O N


 Appellants and cross-appellees, Formosa Plastics Corporation, USA, and
Formosa Plastics Corporation, Texas (collectively "Formosa"), challenge a judgment
in favor of appellee and cross-appellant, Material Partnerships, Inc. ("MPI"), on
MPI's claims for fraud and unjust enrichment. In its cross-appeal, MPI challenges
the trial court's take-nothing judgment on MPI's claim for lost profits due to
Formosa's product deficiencies and the trial court's award of attorney's fees to
Formosa for breach of contract. 

 We review: (1) whether the evidence was legally and factually sufficient to
support the trial court's findings of fraud and unjust enrichment; (2) whether the trial
court erred by awarding MPI monetary damages up to June 1998, when it bargained
for best prices and availability; (3) whether the trial court erred by denying MPI
damages based on profits after June 1998; (4) whether the trial court erred by
awarding Formosa attorney's fees that included time spent on the defense of MPI's
tort claims; and (5) whether the trial court erred by denying MPI recovery for alleged
lost profits (MPI's "Exhibit B" claims). We affirm in part, and reverse in part and
remand in part.

Facts

 MPI is in the business of recycling and trading the following plastic products: 
(1) certified prime resin; (2) wide-spec or off-grade resin; and (3) scrap. In 1994,
MPI had an established base of domestic customers of scrap plastics. MPI also sold
prime and wide-spec product exclusively for export. Formosa Plastics Corporation,
USA, is the parent company that markets plastic products manufactured at various
Formosa facilities throughout the United States. Formosa Plastics Corporation,
Texas, owned and operated the Formosa facility at Point Comfort, Texas. 

 In late 1993, Formosa began producing polyolefins (1) at its Texas plant. The by-products of this production process included scrap plastics. Formosa's vice-president
of sales and marketing at that time was Dick Heinle. Heinle was responsible for the
sale of polyolefins, even though he lacked experience in that area. 

 MPI's president, Joel Burgower, met with Heinle in April 1994. At that
meeting, Burgower agreed to evaluate Formosa's scrap streams at the Point Comfort
facility. Shortly after Burgower completed his inspection at the Point Comfort
facility, MPI began purchasing prime and wide-spec product for its export customers
from Formosa, as well as smaller quantities of scrap. 

 In September 1994, Heinle contacted Burgower and offered MPI 100% of the
scrap generated in certain areas of the Point Comfort facility. In the same
conversation, Heinle mentioned that Formosa was interested in developing direct
sales and asked for MPI's help in establishing a sales base in the domestic market. 
Heinle offered to allow MPI to assist Formosa in securing direct domestic customers
in exchange for Formosa's giving MPI direct access and best prices for Formosa's
export products. The parties agreed to this proposal and discussed working together
in this manner for the next 20 or 25 years. The parties did not agree, however, to
compensate Burgower or MPI by commission or an agent's fee. 

 Following the agreement, MPI identified its previously undisclosed customers
to Formosa. Burgower introduced some of MPI's clients to Formosa representatives
without compensation and often traveled across the country. (2) During this time,
several Formosa officers referred to MPI as Formosa's "partner" and to the
relationship between the two entities as a "partnership." Heinle referred to Burgower
as his "partner" several times, and Burgower frequently introduced Heinle as his
"partner" to new clients without eliciting any complaints. Burgower maintained that
he introduced Formosa to his customers without seeking compensation because he
believed MPI had a partnership with Formosa. Formosa's sales to customers referred
to it by MPI amounted to $53,013,996.51 between 1994 and June 1998. 

 In late 1994, an accounting dispute that arose between MPI and Formosa,
caused Formosa to believe that MPI was in arrears in payments to Formosa. While
trying to reconcile MPI's account, the parties continued to conduct business with each
other, and Formosa extended MPI a $250,000 line of credit. In March 1997, Formosa
stopped providing export product to MPI. During the same year, MPI discovered it
had not been receiving the best prices from Formosa. 

 In July 1997, the parties met, without success, to resolve the dispute over
MPI's account. A few weeks later, MPI sued Formosa. MPI claimed Formosa sold
defective products between 1994 and 1997 and sought damages. MPI also claimed
it lost profits because three companies MPI had provided with Formosa's defective
products stopped doing business with MPI. MPI also sought damages for claims
made by third parties that had purchased Formosa's defective products. (3) Later, MPI
claimed Formosa had committed fraud and had been unjustly enriched because
Formosa's representation of a partnership caused MPI not to charge Formosa a
commission for the clients it introduced to Formosa. Formosa counterclaimed for
breach of contract and sought $611,110.47 for outstanding invoices, plus interest and
attorney's fees. 

 After a bench trial, the trial court awarded MPI approximately $3.8 million on
its fraud and unjust enrichment claims. The trial court awarded Formosa $598,000
on its counterclaim and applied this amount as an offset against MPI's award. The
trial court also awarded Formosa $280,000 in attorney's fees. Formosa moved to
modify the judgment and moved, in the alternative, for a new trial. The trial court
denied the motion for new trial, but the trial court reduced MPI's award to $2.9
million. After applying the offset, MPI's award was approximately $2.44 million. 
MPI filed a motion to modify the reformed judgment, which the trial court denied. 

Formosa's Appeal

 In five issues, Formosa challenges the legal and factual sufficiency of the
evidence to support the trial court's findings of fraud, unjust enrichment, and
damages. 

Standard of Review

 When, as here, the appellate record contains a complete reporter's record of the
trial, we review the trial court's findings of fact under the same standards for legal
and factual sufficiency as govern review of jury findings. Min v. Avila, 991 S.W.2d
495, 500 (Tex. App.--Houston [1st Dist.] 1999, no pet.). 

 A party challenging the legal sufficiency of an adverse finding on an issue on
which it had the burden of proof must show that the evidence, as a matter of law,
establishes all vital facts in support of the issue. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001). In analyzing legal sufficiency, we must first examine
the record for evidence that supports the finding while ignoring all evidence to the
contrary. Id. If no evidence supports the finding, we then examine the entire record
to determine if it establishes the contrary position as a matter of law. Id. The point
of error should be sustained only if the contrary proposition is conclusively
established. Id.

 When a party attacks the factual sufficiency of an adverse finding on an issue
on which it has the burden of proof, it must demonstrate on appeal that the adverse
finding is against the great weight and preponderance of the evidence. Id. at 242. We
must consider and weigh all of the evidence and can set aside a verdict only if the
evidence was so weak or if the finding was so against the great weight and
preponderance of the evidence that the finding was clearly wrong and unjust. Id. 



 Existence of Partnership as Condition of Liability


 In its first issue, Formosa contends the evidence was legally and factually
insufficient to prove that Formosa had a partnership with MPI. A partnership consists
of an express or implied agreement to the following: (1) a community of interest in
the venture; (2) an agreement to share profits; (3) an agreement to share losses; and
(4) a mutual right of control or management of the enterprise. Schlumberger
Technology Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997) (citing Coastal
Plains Dev. Corp. v. Micrea, Inc., 572 S.W.2d 285, 287 (Tex. 1978)). 

 The trial court found that Formosa fraudulently induced the relationship
between it and MPI, and did not find that Formosa and MPI entered into a legal
partnership. Nevertheless, both parties agree that some type of business agreement
existed between them. Because the trial court found only that Formosa
misrepresented the existence of a partnership, we overrule appellant's first point of
error to the extent that Formosa claims the trial court erred by not finding that the
parties' relationship constituted a legal partnership.


 Fraudulent Misrepresentation


 In its second and third issues, Formosa challenges the legal and factual
sufficiency of the evidence to support the trial court's finding of fraudulent
misrepresentation. The trial court found that Formosa committed fraud by falsely
representing to MPI that the companies were "partners." The trial court further
found that MPI reasonably relied on Formosa's misrepresentation to its detriment,
and that Formosa intended that MPI rely on the misrepresentation. Finally, the trial
court found that Formosa would be unjustly enriched unless it paid MPI five percent
of the sales it generated from the customers MPI introduced to Formosa through June
5, 1998.

 Fraud requires a false material misrepresentation that was either known to be
false when made or was asserted without knowledge of its truth. Formosa Plastics
Corp. USA v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 47 (Tex.
1998). Fraud also requires intent that another party rely on the misrepresentation and
be injured by that reliance. Id. A misrepresentation is a false statement of fact or a
promise of future performance made with no intent to perform. Spoljaric v. Pervical
Tours, Inc., 708 S.W.2d 432, 434-35 (Tex. 1986). A promise of future performance
made with no intention of performing at the time the promise was made is an
actionable misrepresentation. Formosa, 960 S.W.2d at 48. 

 1. Misrepresentation

 MPI presented written and oral communications by Formosa in which it
referred to MPI as its partner. During one such communication, Gary Mills, a
business director for Formosa, stated that MPI had been a good partner and that he
looked forward to continuing the partnership for years to come. In another letter,
Paul Huang, a vice-president of Formosa, wrote, "our partnership with you has always
been based on more than you [sic] being an order taker." Additionally, one of
Formosa's legal counsel referred to MPI and Formosa as "business partners." Finally,
Heinle testified that he used the term partner when referring to MPI and was aware
of the correspondence by his employees that referred to the partnership arrangement. 
This evidence is legally sufficient to support the trial court's finding that Formosa
represented that a partnership existed between the parties. 

 In support of its factual sufficiency challenge, Formosa points out that Heinle's
testimony that Formosa never represented that any special arrangement existed
between Formosa and MPI. Although Heinle admitted he had used the term
"partner," he also testified that he commonly uses that term to refer to suppliers and
customers. Additionally, Kenneth Gross, who owned one of the "Exhibit A"
companies that MPI introduced to Formosa, testified that although he did hear
Burgower introduce MPI and Formosa as partners in Heinle's presence, people in the
plastics industry commonly use the words "partner" and "partnership," but without
implicating a legal relationship. We conclude this evidence does not so greatly
preponderate against the evidence support the trial court's finding that Formosa
represented a partnership existed between the parties, and therefore conclude the
evidence is factually sufficient to support that finding. 

 2. Knowledge

 We now turn to Formosa's legal and factual sufficiency challenge to the trial
court's finding that Formosa made misrepresentations knowingly or with reckless
disregard for the truth.

 The evidence shows that Formosa and MPI agreed that MPI would give
Formosa its customer list and that MPI would receive best price and availability from
Formosa as compensation. There was also evidence that Formosa obtained
approximately 59 million dollars worth of business without incurring any substantial
expense. Considering only the evidence tending to support the verdict, there is
sufficient evidence to support the trial court's finding that Formosa either knew its
representations of an agreement were false or acted with reckless disregard of the
truth to whether its representations were false.

 In support of its factual sufficiency challenge, Formosa points to Heinle's
testimony that he denied he had any special arrangements with Mr. Burgower
regarding price or anything else. Heinle more specifically denied that he agreed MPI
would bring domestic sales to Formosa in exchange for Formosa's available export
product at its best price. This evidence does not so greatly preponderate against the
evidence to support the finding that Formosa either knew its representations of an
agreement were false or acted with reckless disregard of the truth to whether its
representations were false. Therefore, we conclude the evidence is factually
sufficient to support the trial court's finding. 


 Intent


 Formosa challenged the sufficiency of the evidence to support the trial court's
finding of Formosa's intent necessary to MPI's claim for fraudulent
misrepresentation. Formosa claims there was no evidence of its officers' intent at the
time the representations were made to MPI. Formosa did offer evidence that it
intended to fulfill its duties under the agreement with MPI, which Heinle denied
existed, as support for its lack of intent not to perform. A party's denial that he ever
made a promise, however, is a factor that can support no intent to perform when the
promise was made. Spoljaric, 708 S.W.2d at 435. Fraudulent intent, which is
difficult to prove, is usually established by circumstantial evidence. Frost Nat'l Bank
v. Heafner, 12 S.W.3d 104, 112 (Tex. App.--Houston [1st Dist.] 2000, no pet.). 
Moreover, to be found liable for fraudulent misrepresentation, a party must have no
intent to perform when a promise is made, although intent may be inferred from the
party's subsequent acts after the representation is made. Spoljaric, 708 S.W.2d at
434. Intent is a fact question vested with the trier of fact because it depends on the
credibility of the witnesses and their testimony. See id. 

 The evidence is legally sufficient to support the trial court's finding of
fraudulent intent. Moreover, Formosa's evidence does not so greatly preponderate
against the trial court's finding of fraudulent intent as to render the trial court's
finding clearly wrong and manifestly unjust. Accordingly, the evidence was also
factually sufficient to support the trial court's finding. 

 4. Reliance

 To establish fraudulent misrepresentation, a party must also prove that it relied
on the misrepresentation to its detriment. Formosa Plastics, 960 S.W.2d at 47. In
this case, the trial court found that Formosa intended to induce MPI's reliance on the
agreement between them in order to gain access to MPI's customers and knowledge
of the plastics business, and that MPI reasonably and justifiably relied on Formosa's
misrepresentations.

 Formosa does not contest MPI's claim that it relied on the existence of a
business agreement, but challenges the legal and factual sufficiency of the evidence
to support the trial court's finding that the reliance was reasonable. MPI offered
evidence that Formosa gained 59 million in sales from the customer MPI introduced
to Formosa. MPI also showed that the customary compensation for this service is 5%
commission on gross sales price. MPI did not charge the 5% fee because it relied on
the agreement between MPI and Formosa that was intended to compensate MPI for
the service. MPI offered evidence that it believed it received best prices for some
amount of time, but that Formosa stopped making the product available at best
prices. As a result, MPI was not fully compensated for its service to Formosa. 
Moreover, MPI incurred expenses without compensation because it was relying on
the partnership. The evidence is legally sufficient to support the trial court's finding
that MPI relied on Formosa's misrepresentations and suffered damages as a result of
that reliance, and does not so greatly preponderate against that finding as to render
it manifestly unjust.

 We overrule appellant's second and third issues on appeal.


 Unjust Enrichment


 In issues four and five, Formosa challenges the trial court's finding that
Formosa was unjustly enriched and the resulting award of damages to MPI. Formosa
contends that a valid agreement governing the terms of compensation precludes
recovery for unjust enrichment. 

 The principle of unjust enrichment creates an implied obligation when a party
is unjustly enriched in a manner not governed by binding contract. Burlington
Northern Railroad Co. v. Southwestern Electric Power Co., 925 S.W.2d 92, 97 (Tex.
App.--Texarkana 1996), aff'd, 966 S.W.2d 467 (Tex. 1998). 

 Recovery for unjust enrichment is appropriate when an agreement is
unenforceable, invalid, not fully performed, or void for other legal reasons. 
Burlington, 925 S.W.2d at 97. Unjust enrichment applies the principles of restitution
to disputes that are not governed by contract and is usually found when a party
obtains a benefit from another by fraud, duress, or the taking of an undue advantage. 
Id. at 97. The trial court found that Formosa's fraudulent misrepresentations unjustly
enriched Formosa to MPI's detriment and thereby awarded monetary compensation
based on the reasonable value of the services MPI rendered to Formosa. 

 Formosa argues that the finding of unjust enrichment was improper because: 
(1) the trial court's finding of fraudulent misrepresentation was improper; (2) MPI
received what it bargained for, namely best prices and availability for a period of
time; and (3) the existence of a binding agreement bars equitable relief under the
theory of unjust enrichment. 

 Because we have already held there was sufficient evidence to support the trial
court's finding of fraud, Formosa's first argument, that the trial court's finding of
fraudulent misrepresentation was unjust, necessarily fails. Likewise, because we have
held that there was no binding agreement, Formosa's third argument fails.

 1. MPI Allegedly Received the Benefit of the Bargain

 Formosa's second argument is two-pronged. Formosa first contends that,
because MPI received best prices and availability for some period of time, it received
the benefit of its bargain. Formosa did not present any evidence, however, to support
this theory. The nature of the agreement required MPI to disclose its customer list
immediately, and Formosa agreed to compensate MPI in the form of best prices and
availability for 20-25 years. MPI would not have been fully compensated even if
Formosa offered it best prices for three years. Further, Formosa did not present any
evidence to show what, if any, compensation MPI did receive for its services by way
of best prices that would be necessary to adjust the award for the reasonable value of
the service. When one has received or used something that warranted compensation
to another, the remedy is money payment for the value of the thing given or the
benefit received. City of Harker Heights v. Sun Meadows Land, Ltd., 830 S.W.2d
313, 319 (Tex. App.--Austin 1992, no writ). 

 Both Formosa and MPI offered evidence that supported the trial court's
finding that the customary value of MPI's service is a 5% commission of the gross
sale price. The evidence shows that Formosa's sales to "Exhibit A" companies up
to June 1998 were approximately 59 million dollars. Based on that number, MPI's
damages expert applied the 5% commission to arrive at MPI's damages. The trial
court agreed with the damage expert's method of calculation up to June 1998 and
awarded damages accordingly. The trier of fact has discretion to award damages
within the range of evidence presented. City of Houston v. Harris County Outdoor
Advertising Assoc., 879 S.W.2d 322, 334 (Tex. App.--Houston [14th Dist.] 1994,
writ denied). Based on the evidence presented, the trial court assessed a reasonable
award of damages. 


 Monetary Compensation Improper


 Second, Formosa cites Peko Oil USA v. Evans to supports its contention that,
because MPI bargained for a business advantage, monetary compensation is
improper. 800 S.W.2d 572, 574 (Tex. App.--Dallas 1990, pet. denied). In Peko Oil,
Sunbelt Oil introduced Peko Oil to the Texaco Program, which resulted in Peko Oil's
entering the Texaco Program. Id. at 574. After Peko Oil signed a letter of intent with
Texaco, Sunbelt Oil demanded to become Peko Oil's exclusive gas marketing agent. 
Id. Peko Oil refused Sunbelt's demand, but offered an alternate arrangement. Id. 
Sunbelt Oil refused and sought cash value of the services allegedly provided under
the theory of quantum meruit. Id. at 574-75. 

 Under the principle of quantum meruit, the plaintiff must show that the party
sought to be charged had reasonable notice that the plaintiff sought to be paid. Id. at
575. The Peko Oil court held that because Sunbelt Oil was seeking a future business
advantage, not compensation, Peko Oil did not have proper notice that Sunbelt Oil
expected to be paid, which precluded recovery under the theory of quantum meruit. 
Id. at 567-577. Peko Oil can be distinguished in two fundamental respects. 

 First, Sunbelt Oil provided Peko Oil a service before discussing compensation,
which would suggests that the service was provided gratuitously. See id. at 577. In
this case, however, MPI did not release its customer list to Formosa until an
agreement ensured that MPI would be compensated for this service. There is no
evidence that MPI gave its personal customer list to Formosa gratuitously. 

 Second, Sunbelt Oil was attempting to recover under the equitable remedy of
quantum meruit, a theory that does not involve the issue of fraud. See id. Quantum
meruit is based on a promise implied in law to pay for beneficial services rendered
and knowingly accepted. Id. at 575. An element that must be proved to recover under
quantum meruit is that the person sought to be charged must have been reasonably
notified that the plaintiff, in performing such services, was expecting to be paid by
the person sought to be charged. Id. Because Sunbelt Oil was seeking a future
business opportunity, and not compensation, Peko Oil was not put on notice that
Sunbelt Oil expected to be paid. See Peko Oil USA, 800 S.W.2d at 576-77. 

 Quantum meruit is an equitable remedy, grounded in principles of unjust
enrichment, but is only one of a number of equitable remedies available. City of
Harker Heights, Tex. v. Sun Meadows, Ltd., 830 S.W.2d 213 (Tex. App.--Austin
1992, no writ). Unavailability of quantum meruit does not preclude other remedies. 
See id. Because MPI did not attempt to recover under the principle of quantum
meruit, but under an alternative equitable theory of unjust enrichment, Peko Oil does
not apply.

 MPI is not precluded from recovering under a theory of unjust enrichment
because the agreement between MPI and Formosa is not a valid agreement. The trial
court did not err, therefore, in awarding damages based on the theory of unjust
enrichment. We overrule Formosa's fourth and fifth issues.

MPI's Cross-Appeal

 MPI brings a cross-appeal, claiming that: (1) the trial court erred by finding
that MPI suffered no recoverable damages after June 1998, based on its fraud and
unjust enrichment claims; (2) the trial court erred by awarding Formosa attorney's
fees without requiring Formosa to segregate the fees corresponding to defending
MPI's claims from the fees corresponding to successfully prosecuting Formosa's
counterclaim; and (3) the trial court erred by finding that MPI did not suffer any
damages as a result of freight overcharges, lost or damaged freight, or breach of
contract that resulted from Formosa's actions.


 MPI's Damages


 In its first cross-issue, MPI contends the trial court erroneously cut off MPI's
damages after June 1998. The trial court found the reasonable value of the unjust
benefit to be 5% of the total sales by Formosa to companies introduced by MPI
through June 5, 1998. MPI was awarded approximately 2.9 million dollars in
damages. MPI argues that the damages should not have stopped in June 1998,
because MPI presented uncontroverted expert testimony establishing damages up to
the time of trial. MPI first addresses the trial court's refusal to award past damages
from June 1998 up to the time of trial, September 1999, and then MPI turns to future
damages.

 1. Past Damages: June 1998-September 1999

 MPI contends the trial court erred in failing to award MPI past damages from
June 1998 to the date of trial in September 1999, as extrapolated by its expert witness
and based on the figures from April 1994 through June 1998. MPI asserts that,
because the expert testimony it offered was unchallenged and uncontroverted, the trial
court was not free to disregard the expert testimony.

 The trial court properly awarded MPI damages through June 1998. Recovery
of lost profits must be shown with a reasonable degree of certainty, and opinions or
estimates must be based on objective facts, figures, or data from which lost profits
can be ascertained. Holt Atherton Indus. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992). 
Although MPI bases its extrapolations on the figures of sales to Exhibit A customers
through 1998, sales up to the time of trial could have been proven by exact figures
from Formosa. It was reasonable for the court to require actual data instead of
extrapolations calculated by MPI's expert witness. In cases involving lost earnings,
the burden of proof for past earnings is greater than that for future earning capacity,
because evidence of plaintiff's actual past earnings is certain. Strauss v. Continental
Airlines, Inc., 67 S.W.3d 428, 435 (Tex. App.--Houston [14th Dist.] 2002, no pet.). 
Similarly, lost profits could have been accurately shown from actual sales from June
1998 until the time of trial. Therefore, MPI had a higher burden of proof. Because
accurate evidence was available, the trial court correctly refused to consider
extrapolations based on past profits. 

 MPI relies on cases that do not involve the reasonably certain establishment of
past lost profits. See Ralston Purina Co. v. Barkley Feed & Seed Co., 722 S.W.2d
431, 434 (Tex. App.--Houston [1st Dist.] 1986) rev'd on other grounds, 744 S.W.2d
932 (Tex. 1988); Mack v. Moore, 669 S.W.2d 415, 419 (Tex. App.--Houston [1st
Dist.] 1984, no writ); Schwartz v. Pinnacle Comm., 944 S.W.2d 427, 433-36 (Tex.
App.--Houston [14th Dist.] 1987, no writ). Furthermore, expert testimony may be
conclusive if the nature of the subject matter requires that the fact finder be guided
solely by the opinion of experts, and the evidence is otherwise credible and free from
contradiction. Mack, 669 S.W.2d at 419. Because MPI could have presented
evidence regarding the actual sales Formosa made to the "Exhibit A" companies
between June 1998 and the time of trial, the nature of the subject matter did not
demand that the fact finder be guided soley by the opinion of experts. For these
reasons, the trial court properly found that lost profits were not shown with
reasonable certainty from June 1998 until the time of trial.

 2. Future Damages: September 1999-2004

 MPI contends the trial court erred by not allowing MPI to recover future
damages because the expert testimony was clear, direct, positive and uncontroverted.

 Our review of the record indicates that MPI's expert witness did not show that
lost profits extrapolated through the year 2004 would be reasonable and adequate. 
Because the expert did not provide a basis for extrapolating a 20- to 25-year
agreement through the year 2004, the trial court properly determined that MPI's
award of damages should not be extrapolated through the year 2004 .

 We overrule MPI's first cross-issue.


 Attorney's Fees 


 In its second cross-issue, MPI asserts that the trial court erred by awarding
Formosa attorney's fees both for successfully prosecuting its counterclaim for breach
of contract and for unsuccessfully defending MPI's action. The trial court awarded
Formosa $280,000 in attorney's fees. That amount represented compensation for the
hours Formosa's law firm spent defending against MPI's fraud and unjust enrichment
claims, as well as the hours the firm spent prosecuting Formosa's counterclaim for
breach of contract. The trial court did not ask that Formosa to segregate the fees
corresponding to defending MPI's claims from the fees corresponding to successfully
prosecuting Formosa's counterclaim.

 As a general rule, the party seeking to recover attorney's fees carries the burden
of proof. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991). 
Attorney's fees are not recoverable from an opposing party unless provided for by
statute or by contract between the parties. Travelers Indem. Co. of Connecticut v.
Mayfield, 923 S.W.2d 590, 593 (Tex. 1996). Section 38.001 of the Civil Practice and
Remedies Code authorizes recovery of attorney's fees for suits on a contract, but does
not apply to defense of actions for fraud and unjust enrichment. See Tex. Civ. Prac.
& Rem. Code Ann. § 38.001 (Vernon 1997). (4) 

 A party is generally required to segregate fees for claims for which fees are
recoverable from fees associated with claims that do not permit recovery. Stewart
Title, 822 S.W.2d at 10-11. "A recognized exception to this duty to segregate arises
when the attorney's fees rendered are in connection with claims arising out of the
same transaction and are so interrelated that their 'prosecution or defense entails
proof or denial of essentially the same facts.'" Id. at 11; Flint & Assoc. v.
Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 624-25 (Tex. App.--Dallas
1987, writ denied). When causes of action involved depend on the same set of facts
or circumstances and are thus intertwined to the point of being inseparable, the party
suing for attorney's fees may recover the entire amount covering all claims. Stewart
Title, 822 S.W.2d at 11 (emphasis added). 

 In moving for a partial new trial, Formosa claimed that "MPI's unjust
enrichment claim and award for commissions do not share the same facts and issues
as Formosa's counterclaim to collect an overdue debt." Formosa also contends, and
we agree, that its own counterclaim is "factually and legally separable" from MPI's
claim. The record shows that Formosa's counterclaim for a breach of contract arising
out of unpaid invoices does not share the same facts and issues as MPI's claims for
fraud and unjust enrichment. Accordingly, the exception articulated in Stewart Title
does not apply, and the trial court erred by not asking Formosa to segregate its
attorney's fees. (5) 

 Because the determination of reasonable attorney's fees is a question for the
trier of fact, we remand the cause to the trial court for determination of what portion
of the $280,000 awarded to Formosa as attorney's fees is attributable to the successful
prosecution of Formosa's counterclaim. See Stewart Title, 822 S.W.2d at 12. The
portion of the $280,000 that corresponds to Formosa's defense of MPI's unjust
enrichment action cannot be awarded to Formosa and must be deleted. See id.

 We sustain MPI's second cross-issue.


 MPI's "Exhibit B" Claims


 In its third cross-issue, MPI challenges the findings of the trial court that MPI
did not suffer any damages as a result of freight overcharges, lost or damaged freight,
or breach of contract. MPI challenges the legal and factual sufficiency of the
evidence to support the trial court's findings on MPI's exhibit B claims. 
Accordingly, we apply the usual standard of review. See Dow Chemical, 46 S.W.3d
at 241-42. MPI claims that it presented evidence to prove it was entitled to damages while
Formosa offered no controverting evidence. Burgower testified that MPI suffered
damages because Formosa either did not perform its part of the agreement with MPI,
performed in an untimely fashion, or rendered substandard performance. During
Burgower's cross-examination. Formosa repeatedly challenged Burgower on the
grounds he did not support his testimony with documentary evidence. Formosa did
not offer any controverting evidence to Burgower's claims. The trial court found that
MPI did not prove the alleged damages on any of those claims. (6)

 Although supporting documentation may affect the weight of the evidence, it
is generally not necessary to produce, in court, the documents that support opinions
or estimates of damages arising from lost profits. See Holt Atherton Indus., Inc. v.
Heine, 835 S.W.2d 80, 84 (Tex. 1992). Accordingly, although Burgower did not
support his testimony on transaction numbers 5, 6, 13, 14, 16, 17, 22, 30, and 33 with
documentary evidence, his lack of documentation did not automatically invalidate his
claims for lost profits damages, but might have affected the weight the trial court
placed on this evidence.

 The trier of fact, here the trial judge, is the sole determiner of the credibility of
the witnesses and the weight to be given their testimony, and we may not substitute
our judgment for the fact finder simply because we may disagree with the fact finder's
conclusions. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). Because
they can observe a witness's demeanor, trial courts are given great latitude to believe
or disbelieve a witness's testimony, particularly when the witness is interested in the
outcome. In re Doe 4, 19 S.W.3d 322, 325 (Tex. 2000). Moreover, a trial judge can
reject the uncontroverted testimony of an interested witness unless it is readily
controvertible, clear, positive, direct, and there are no circumstances that tend to
discredit or impeach it. Id.; Lofton v. Texas Brine Corp., 777 S.W.2d 384, 386 (Tex.
1989).

 MPI's lack of written documentation to corroborate Burgower's verbal
testimony as to transaction numbers 5, 6, 13, 14, 16, 17, 22, 30, and 33 could have
caused the trial court to question the veracity Burgower's testimony and to discredit
his testimony. See Heine, 835 S.W.2d at 84. It was, therefore, within the province
of the trial judge as the sole fact finder, to reject Burgower's uncontroverted
testimony. See id. Accordingly, the evidence was sufficient to support the trial
court's findings of fact relating to transaction numbers 5, 6, 13, 14, 16, 17, 22, 30, and
33. (7)

 We overrule MPI's third cross-issue.

Conclusion

 We affirm the part of the trial court's judgment that awarded MPI damages for
fraud and unjust enrichment. We reverse the part of the trial court's judgment that
awarded Formosa attorney's fees without requiring Formosa to segregate the fees
corresponding to defending MPI's claims from the fees corresponding to successfully
prosecuting Formosa's counterclaim. We remand the cause to the trial court for a
hearing to determine the portion of Formosa's attorney fees that are recoverable for
services rendered to prosecute Formosa's counterclaim successfully . We affirm that
part of the trial court's judgment finding that MPI did not suffer any damages as a
result of freight overcharges, lost or damaged freight, or breach of contract that
resulted from Formosa's actions.



 Tim Taft 

 Justice


Panel consists of Justices Taft, Wilson, (8) and Price. (9)

Justice Wilson dissents without opinion.

Do not publish. Tex. R. App. P. 47.
1. Polyolefins are polymers derived from chemicals known as olefins that can
form tough, flexible plastic materials with a variety of uses.
2. As a general rule, in this industry those who bring buyers and sellers together
earn a 4-6% commission of the gross sales their customers generate.
3. The parties collectively refer to these claims as MPI's "Exhibit B" claims.
4. A person may recover reasonable attorney's fees from an individual or
corporation, in addition to the amount of a valid claim and costs, if the claim
is for: (1) rendered services; (2) performed labor; (3) furnished material; (4)
freight or express overcharges; (5) lost or damaged freight or express; (6)
killed or injured stock; (7) a sworn account; or (8) an oral or written contract. 
Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997). 
5. Formosa relies on Republicbank Dallas, N.A. v. Shook, 653 S.W.2d 278 (Tex.
1983), to contend that segregation may not be required when the same party
defends against a claim and also prosecutes its own counterclaim. In Shook,
the supreme court held that part of the defendant/counter-plaintiff's "suit . . .
involved its overcoming [the plaintiff's] claims" and that the
defendant/counter-plaintiff "had to overcome the [plaintiff's] claims before it
could recover" on its counterclaim. Id. at 282. In this case, Formosa did not
have to overcome MPI's claim of unjust enrichment in order to prevail on its
counterclaim of unpaid invoices because the claim and counterclaim were not
based on the same set of facts. Accordingly, Shook's holding is inapplicable
to this case.
6. For example, with regard to transaction number 30, in which MPI claimed
damages of $315 arising out of increased shipping costs MPI incurred while
shipping goods out of Formosa's plant, Burgower produced a letter he sent to
Formosa as well as a check to the trucking company. Burgower's letter, dated
September 1, 1995, described a problem MPI allegedly had with shipping
product out of Formosa's Point Comfort plant; the letter states that MPI had to
pay $482.55 and $235.00 to two separate trucks for shipping the product. MPI
also produced a check stub dated September 30, 1995, paid out to Safeway
Transportation for $350. The letter and check were not linked in any way, and
the numbers referenced in the two documents did not explain how MPI arrived
at a loss figure of $315. The trial court found that MPI did not prove the
damages it alleged in this claim.
7. MPI seeks attorney's fees associated with prosecuting these claims in the event
it prevails. MPI cannot be awarded attorney's fees because it does not prevail.
8. The Honorable Davie L. Wilson, who retired on March 31, 2002, continues to
sit by assignment for the disposition of this case, which was submitted on May
7, 2001.
9. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.