Affirmed and Memorandum
Opinion filed October 20, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00072-CR

NO. 14-08-00073-CR

_______________

 

ADAM TORRES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                     
                                               

On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause Nos. 1053586 &
1053587

                                                                                                                                                                                    


 

M E M O R A N D U M   O P I N I O N

 








A jury found appellant, Adam Torres, guilty of two charges of
aggravated sexual assault of a child and assessed punishment at twenty-years= confinement in both cases.  The
court sentenced appellant accordingly, with the sentences to run concurrently. 
In nine issues, appellant complains of (1) the trial court=s rulings on appellant=s objections to the State=s cross-examination of appellant, (2)
the trial court=s rulings on appellant=s objections to the State=s closing argument, (3) the trial
court=s purported denial of appellant=s request for an expert psychological
examination of the complainant, and (4) the factual insufficiency of the
evidence.  Because all dispositive issues of law are settled, we issue this
memorandum opinion and affirm.  See Tex. R. App. P. 47.4.

I.  Factual and Procedural Background

Appellant met N.G.=s mother, Nora Hernandez, in 1992,
when N.G. was about two years old.  From 1992 to 2000, appellant lived
on-and-off with Hernandez, N.G., and N.G.=s older brother, Rolando.  Following
N.G.=s outcry in November, 2005, appellant
was charged with two aggravated sexual assaults of N.G., allegedly occurring
February 10 and March 1, 2000.[1]  Appellant
pleaded not guilty to both charges, and a jury heard the following evidence.

N.G. was the State=s principal witness.  She was
seventeen years old at the time of trial and ten years old at the time of the
charged offenses.  According to N.G., appellant=s abuse of her began when she was
very young, with the first instance of inappropriate conduct occurring when she
was four years old and living on De Boll Street.  Appellant asked N.G. to tie
his shoes, and N.G. noticed appellant was not wearing underwear.  When N.G.
told appellant she could see his Aprivate part,@ appellant asked her whether she
would like to touch it.  N.G. testified, A[T]hat=s when everything started.@

After this incident, appellant began to put his finger inside
N.G.=s Aprivate part.@  He tried to touch her about ten or
fifteen times when she was four years old.  Appellant also put his tongue on
N.G.=s vagina and occasionally forced her
to masturbate him.  He also forced her to perform oral sex on him.








When N.G. was five years old, appellant and N.G.=s family moved into a garage
apartment at her grandmother=s house.  Appellant continued to engage N.G. in manual and
oral sexual contact, but he did not have sexual intercourse with her.  About
fifteen incidents occurred while N.G. was living at her grandmother=s house.  At age five, she did not
tell anyone about the incidents because she did not know appellant=s conduct was wrong and she was
afraid.  Apparently, despite the sexual misconduct, appellant was nice to N.G. 
He was like a father to her and she loved him.

In 1998, when N.G. was eight years old, she, her family, and
appellant moved to a downstairs apartment at Dover Side.  Appellant continued
to engage N.G. in oral sex, and he forced her to have sexual intercourse with
him for the first time.  Appellant would ask N.G. to tell her mother she was
sick so she could stay home.  He would then assault her.  During the two years
they lived at this address, appellant had sexual intercourse with N.G. about
forty or fifty times.  Appellant also touched N.G.=s genitalia or breasts more than
three hundred times.

When N.G. was ten years old, they moved to an upstairs
apartment in the same Dover Side building.  Appellant engaged N.G. in oral and
manual sex about three times a week and sexual intercourse once a week.  Once,
he took nude photographs of N.G.  On this occasion, appellant asked N.G. to
tell her mother she was sick so she would not have to go to school.  N.G. was
starting to realize something was not right about appellant=s conduct, but she did not tell
anyone because she feared appellant after she saw him threaten and choke her
mother.

Appellant and Hernandez separated in December, 2000. 
Appellant moved into his mother=s house, and Hernandez and her children moved back to N.G.=s grandmother=s house.  Although Hernandez and
appellant continued their physical relationship through 2005,  Hernandez
started dating another man, Soto Guadalupe, in January or February 2004 and
married him in April 2005.  Through November 2005, appellant was giving
Hernandez hundreds of dollars each week.[2]








Appellant continued to engage in sexual contact with N.G.,
but with less frequency after appellant moved away.  Occasionally, appellant
took N.G. to motels where they had sexual intercourse.  During spring break
2005, appellant told N.G. they were going to the mall to buy her Jordan tennis
shoes.  On the way, he stopped at the Scottish Inn, near the mall, which was
the only time he took her there.

In a November 2005 telephone conversation, appellant told
N.G. that, when she turned eighteen years old, he wanted to take her from her
mother and move far away.  He said they would have their own place and start a
family.  N.G. feared the abuse would never end and wanted to commit suicide.

On November 30, 2005, N.G. ingested Xanax in the high school
restroom.  The next event she remembered was awakening in a hospital with her
mother and father nearby.[3]  They asked
her why she had taken the Xanax.  Because of what appellant had said to her
during the telephone conversation, N.G. finally had the courage to tell her
parents what had happened and told them appellant had raped her.

In addition to N.G., the State presented four other witnesses
in its case-in-chief: Houston Police Officer Paula Camp, who talked with N.G.
in the hospital; Dr. Donna Mendez, who examined N.G. at the Children=s Assessment Center; Patty Tilsen,
the psychotherapist who treated N.G. and her family; and Houston Police Officer
Anna Moreno, who investigated the case.








Hernandez and appellant testified for the defense.[4] 
Hernandez=s testimony about the chronology of her relationships with appellant and
Guadalupe essentially paralleled N.G.=s testimony.  Hernandez also
described some of the details of her own sexual relationship with appellant,
including a time he took her to the Garden Inn.  Hernandez denied appellant
ever took her to the Scottish Inn.

Appellant testified that, in August 2005, a friend told
appellant Hernandez was married.  When appellant then asked N.G. whether
Hernandez had a relationship with another man, N.G. convinced appellant he was
the only man in Hernandez=s life.

Appellant also testified that, on Thanksgiving, 2005, he
cooked special food for Hernandez=s family, but Hernandez would not
permit appellant to come to her mother=s house for dinner.  According to
appellant, on the day after Thanksgiving, Hernandez came to his house and asked
for money.  Appellant asked why he was not allowed to be with Hernandez=s family on Thanksgiving and told her
he wanted to be together on Christmas.  She responded he should not come. 
Appellant then told Hernandez he was not going to give her any more money.

Appellant denied having sexual intercourse or oral sex with
N.G. and denied ever having touched her inappropriately.  He testified he never
spent time alone with her in a room.

II.  Issues One through Four: The State=s Cross-Examination of Appellant

In issue one, appellant argues the prosecutor engaged in
misconduct resulting in reversible error during her cross-examination of
appellant when she asked appellant whether three other witnesses were lying. 
In issues two and three, appellant argues the trial court erred in overruling
his requests for a mistrial after sustaining his objections to the State=s questions about whether Hernandez
and N.G. were lying.  In issue four, appellant argues  the trial court erred in
overruling his objection to the State=s question regarding the truthfulness
of Officer Moreno=s testimony.  We begin by addressing appellant=s second and third issues, which
pertain to denial of appellant=s motions for mistrial.








Denial of requests for a mistrial.  We review the trial court=s denial of a
motion for mistrial
under an abuse-of-discretion standard. Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App.
2004).  We must uphold the trial court=s ruling if it was
within the zone of reasonable disagreement.  Archie v. State, 221 S.W.3d
695, 699 (Tex. Crim. App. 2007).  A mistrial is required only in extreme
circumstances when the prejudice is incurable.  Id.  

In determining whether a trial court
should have granted a mistrial we consider most, if not all, of the same
factors that attend a harm analysis.  See id. at 700 (stating same in context of case
involving prosecutor=s closing argument in punishment phase).  To determine
whether a trial court abused its discretion, we therefore apply the test
articulated in Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.
1998).  See id.  That test requires balancing three
factors:  (1) the severity of the conduct; (2) the measures adopted to cure any
harm from the conduct; and (3) the certainty of conviction absent the conduct. 
See id.

The following two parts of the State=s cross-examination of appellant are
the subject of issues two and three, respectively:

Q.   Nora [Hernandez] stated that she=s only been to one place and that was the Garden Inn;
is that right?

A.   That is correct.

Q.   So, Nora=s only been to the Garden Inn; is that correct?

A.   That is not correct.

Q.   Nora doesn=t have any reason to lie about what hotels you took
her to C

MR. SCHNEIDER
[defense counsel]:  Your Honor, I object.

. . . .

 

Q.   Did you take [N.G.] to buy those
Jordan tennis shoes I just showed you?

A.   I do not remember.

Q.   You do not remember?








A.   No.

Q.   Are you saying that [N.G.]=s lying or you just don=t remember?

MR. SCHNEIDER:  Your Honor, object. 
Improper question.

 

In both instances, counsel objected before appellant
answered, and the trial court sustained the objection and instructed the jury
to disregard the question.  In the second instance, the trial court further
instructed the jury:

Members of the jury, you=re instructed to disregard the last question from the
prosecutor and also not to draw any inference from the question being asked. 
It=s the jury=s
call on whether any witness is telling the truth or not and not a decision for
another witness to make.  So, that invades the province of the jury.  So,
please disregard that.

 

An attorney may not impeach one
witness=s testimony with the testimony of
other witnesses.  Lopez v. State, 200 S.W.3d 246, 257 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d) (citing Ex parte McFarland,
163 S.W.3d 743, 755 n.37 (Tex. Crim. App. 2005)).  In the preceding two
instances, however, counsel objected before appellant could answer the
questions, and the questions therefore did not result in the introduction of
evidence.  See Richard v. State, 830 S.W.2d 208, 215 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d) (stating unanswered question did
not inject new facts into trial).  Additionally, the trial court instructed the
jury to disregard the questions, and we may presume the jury followed that
instruction.  Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App.
1987); see Ransom v. State, 789 S.W.2d 572, 585 (Tex. Crim. App.
1989) (AGenerally, any error in asking an
improper question is cured or rendered harmless by an instruction to disregard.@).  Finally, given the fact the
questions went unanswered, the instruction to disregard the questions, and the
totality of the evidence in the case, we conclude conviction was certain even
absent the questions.

For the preceding reasons, we overrule appellant=s issues two and three.








Overruling of objection.  In issue four, appellant contends
the trial court erred in overruling his objection to the State=s question Aconcerning the truthfulness of
Officer Moreno=s testimony.@  We review a trial court=s decision to admit or exclude
evidence under an abuse‑of‑discretion standard.  Coffin v. State,
885 S.W.2d 140, 149 (Tex. Crim. App. 1994).  Under this standard, if the trial
court=s ruling was within the zone of
reasonable disagreement, we will not disturb the ruling.  Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).

The following exchange, related to whether appellant
cooperated with the investigation, is the subject of appellant=s fourth issue:

Q.  
Officer Moreno called you three times.  Did you hear her say that when she
testified?

A.   I
did hear her.

Q.  
Okay.  But you never returned her call?

A.   But
that wasn=t correct.  She did not call me three
times.  The
first time I ever heard about this is when C.P.S. called me.  And they called
me and I went.

Q.   So,
are you saying that Officer Moreno never called you?

A.  
That is correct.

Q.   So,
when Officer Moreno said she called you three times, that is not true?

A.  
That=s not true.

MR.
SCHNEIDER:  Your Honor, I object.

THE
COURT:  Overruled on that specific point.[5]








In explaining its ruling, the court observed, AI think he opened the door.  He=s the one that said what he said is
not true.@  A defendant cannot complain about the admission of evidence when he
first volunteered it.  See Beard v. State, 481 S.W.2d 875, 877 (Tex.
Crim. App. 1972); Garza v. State, 397 S.W.2d 847, 849 (Tex. Crim. App.
1965).  Moreover, even if admission of appellant=s testimony was improper, it was
harmless.  See McKinney v. State, 491 S.W.2d 404, 408 (Tex. Crim. App.
1973) (holding that prosecutor=s asking defendant whether State=s witnesses were Alying@ for testifying inconsistently with
defendant=s version, although possibly argumentative, was not reversible error).

We overrule appellant=s fourth issue.

Prosecutorial misconduct.  In issue one, appellant argues the
prosecutor engaged in misconduct amounting to reversible error by Arepeatedly@ asking appellant whether other
witnesses were lying.  As set forth above, appellant identifies only three
questions he finds objectionable.  He did not answer two and effectively
answered the third before it was asked.

We do not condone the prosecutor=s asking appellant to comment on the
veracity of another witness twice after the trial court had sustained an
objection to such a question.  Nevertheless, applying the Mosley factors
as we did above, we conclude the prosecutor=s conduct did not rise to a level
warranting a mistrial.

Appellant, however, relies primarily on a passage from United
States v. Geston, 299 F.3d 1130 (9th Cir. 2002).  Geston was a Department
of Defense police officer accused of assaulting a seaman apprentice with his
baton.  At issue was the prosecution=s cross-examination of defense
witnesses Petty Officers Garrett and Groot, during which the prosecution asked
Garrett and Groot whether the government=s witnesses were lying.  In the
passage on which appellant relies, the court opined:








We have held that it is reversible error
for a witness to testify over objection whether a previous witness was telling
the truth.  United States v. Sanchez‑Lima, 161 F.3d 545, 548 (9th
Cir. 1998).  AIt is the jurors=
responsibility to determine credibility by assessing the witnesses and witness
testimony in light of their own experience.@  Id.
(citation omitted).  ATestimony regarding a witness= credibility is prohibited unless it is admissible as
character evidence.@  Id. (citation omitted).

A prosecutor=s improper questioning is not in and of itself sufficient to warrant
reversal.  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998).  It must
also be determined whether the prosecutor=s
actions Aseriously affected the fairness, integrity, or public
reputation of judicial proceedings, or where  failing to reverse a conviction
would result in a miscarriage of justice.@  United
States v. Tanh Huu Lam, 251 F.3d 852, 862 (9th Cir. 2001) (citation
omitted).  Under the circumstances of this case, we hold that improper
questioning by the prosecution resulted in reversible error.  Geston=s first trial, which did not include the improper
questioning, resulted in a mistrial, with the jury unable to reach a verdict. 
This circumstance leads us to conclude that the improper questioning impacted
Geston=s due process rights.  In fact, the district court
specifically noted that one of the few differences between the first and second
trials was the aggressive attack on Garrett=s
credibility.  This case was a close one, as evidenced by the first jury=s inability to reach a verdict.  Geston=s fate hinged on resolution of the conflicting
testimony presented by the parties.  We may consider the relative strength of
the parties= positions in deciding whether reversal is
appropriate.  United States v. Kerr, 981 F.2d 1050, 1054 (9th
Cir.1992).  In a case where witness credibility was paramount, it was plain
error for the court to allow the prosecutor to persist in asking witnesses to
make improper comments upon the testimony of other witnesses.

 

Id. at 1136B37.

In Geston, the defense did not object to several of
the questions, the trial court overruled others, and there was no instruction
to disregard.  The appellate court also characterized the prosecutor as Apersist[ing] in asking witnesses to
comment upon the veracity of other witnesses.@  Id. at 1138.  In contrast,
we have at most three improper questions, only two of which were answered and
two of which the jury was told to disregard.  Geston is distinguishable
and not persuasive authority for the present case.

We overrule appellant=s first issue.

III.  Issues Five through Seven: Closing Argument

In issues five and six, appellant contends the trial court
erred in overruling two of his objections to the State=s closing argument.  In issue seven,
he contends the trial court erred in denying his request for a mistrial after
sustaining his objection to a third argument.

There are four areas of proper jury argument: (1) summation
of the evidence; (2) reasonable deductions from the evidence; (3) responses to
opposing counsel=s argument; and (4) pleas for law enforcement.  Perry v.
State, 977 S.W.2d 847, 850 (Tex. App.CHouston [14th Dist.] 1998, no pet.).
An attorney may not inject speculative evidence outside the record in his jury
argument.  Everett v. State, 707 S.W.2d 638, 640B41 (Tex. Crim. App. 1986).  An attorney
nevertheless may draw all reasonable, fair, and legitimate inferences from the
facts in evidence.  Williams v. State, 688 S.W.2d 486, 491 (Tex. Crim.
App. 1985). Additionally, even aggressive arguments are permissible as long as
the arguments fall within one of the four areas of proper jury argument.  See
Berry v. State, 233 S.W.3d 847, 860 (Tex. Crim. App. 2007).  Error occurs
when facts not supported by the record are interjected into the argument, but
such error is not reversible unless, in light of the record, the argument is
extreme or manifestly improper.  Guidry v. State, 9 S.W.3d 133, 154
(Tex. Crim. App. 1999).  To determine whether an improper jury argument is
harmful, we consider (1) the severity of the misconduct or prejudicial effect,
(2) any curative measures taken, and (3) the certainty of conviction or
punishment assessed absent the misconduct.  Martinez v. State, 17 S.W.3d
677, 692B93 (Tex. Crim. App. 2000).








Reference to N.G=s statement to Officer Camp.  In issue five, appellant contends
the trial court erred in overruling his objection to the following argument:  AThe next thing I want to talk about
why [N.G.=s]=s so credible is her consistent statements.  Now, let=s see.  As of November 30th, 2005,
you know she gave a statement to Officer Camp that detailed C that day she did give details to
Officer Camp.@  Appellant objected on the ground there was Ano evidence of what was said to
Officer Camp.@  The trial court overruled the objection, but instructed the jury to Arecall what the evidence is.@

Contrary to appellant=s contention, the State=s argument was supported by facts in
the record.  Camp was a patrol officer dispatched to the hospital the day N.G.
overdosed on Xanax.  Camp testified she spoke to N.G. in the emergency room for
about twenty or thirty minutes and N.G. provided Camp with Aspecific details.@

Accordingly, we overrule appellant=s fifth issue.

Reference to N.G.=s probation.  In issue six, appellant contends
the trial court erred in overruling his objection to the following argument:

Another reason why [N.G.=s] so credible.  Circumstances
of the outcry.  She=s in a hospital room with doctors.  Her father, her
real father in the room. The mother hasn=t
even had time to talk to her yet.  And she says, AAdam raped me.@  Did the mom think of that then?  Or wait.  Before
she took the drugs?  When did the mom come up with this theory?  Or did she
just use this to get out of jail, as [defense counsel] would like you to
think?  She didn=t get any special treatment.  She got a felony probation that she had to fulfill.  She got
no favors from anyone.

 

Defense counsel objected on the ground there was Ano evidence of what the outcome was.@  The trial court again instructed
the jury to Arecall what the evidence [was].@

The jury had heard evidence N.G. was arrested for possession
of the Xanax, went to the police station, and then went to the hospital.  The
jury also heard evidence N.G. had been charged with possession of drugs and had
appeared in juvenile court the January after her outcry.  The jury, however,
had not heard evidence N.G. was placed on probation for the offense.[6]








Appellant does not explain how this argument was harmful, and
we cannot conclude it was.  The prosecutor=s reference to N.G.=s probation was brief, and, if
anything, probation indicated a more lenient treatment than a sentence of
confinement, thus potentially running counter to the prosecutor=s argument N.G. had not received
special treatment.  Although the trial court overruled appellant=s objection and did not instruct the
jury to disregard the argument, the court did instruct the jury to recall what
was in evidence.

In light of the record, the prosecutor=s argument does not warrant
reversal.  See Martinez, 17 S.W.3d at 692B93; Guidry, 9 S.W.3d at 154. 
Accordingly, we overrule appellant=s sixth issue.

Comment about the
Scottish Inn.  In issue seven, appellant focuses on the following part
of the State=s closing argument:  ASo, my question
is:  Who is [appellant] with at the Scottish Inn and Suites?  Hope to God it=s not another
child.@  Appellant objected
without giving a ground.  The trial court immediately sustained the objection
and instructed the jury to disregard the argument.  Appellant contends the
trial court erred in overruling his subsequent motion for mistrial.  To analyze
appellant=s contention, it is necessary to view the evidence to
which the argument referred and the context in which it occurred.

One defensive theory was that N.G., in
fabricating her story, had drawn details from her mother=s sexual
experiences with appellant.  It was undisputed appellant and Hernandez (N.G.=s mother) met each
other at motels on multiple occasions, but Hernandez testified she never went
to the Scottish Inn with appellant.  Appellant, however, introduced evidence he
had been at a Scottish Inn on March 9, 2009, when he claimed he was there with
Hernandez.

N.G. testified appellant had taken her to
the Scottish Inn one time.  She remembered that time because it was on
appellant=s payday during spring break 2005.  Appellant was
supposed to take N.G. to a mall to buy her a pair of Jordan tennis shoes, but
he took her to the Scottish Inn first, where he forced her to have intercourse
with him.  N.G. described the sexual act and the room in which it occurred in
detail.








The State introduced a receipt from the
Scottish Inn for March 24, 2005, with a check-in time of 5:00 pm and a
check-out time of 6:00 pm.  Appellant=s own bank records
showed a March 24, 2005 purchase at Northwest Foot Act.

Appellant=s counsel devoted
a considerable portion of his closing argument to the March 9, 2005 record for
the Scottish Inn:

Adam Torres and Nora Hernandez went
to motels all around this area once a week.  Why?  So, she could get her $300.
March 9th, where is that?  Scottish Inn and Suites.  She says she never went to
Scottish Inn and Suites.  Who did he go with, if not Nora Hernandez? March
24th, she got her $300, just like she did every week from Adam Torres.  Look at
these records.  Add up how much C how many $300.  Add up the amount of money, the checks,
from February 25th to April 9th, almost $6,000.  That=s a lot of money she was getting. 
Those records don=t prove.  They show the mirror, the
reflection of [N.G.] and her mother. March 9th.  That record=s important.

. . . .

Now, the State is going to say, look at
March 24th.  Look at the Scottish Inn records.  March 24th, that proves she=s telling the truth.  That proves nothing.  That
proves the same thing that March 9th proves, that Nora was going to motels with
Adam Torres.  She went to the Garden Inn.  They went to all the motels around. 
They had to go to motels far away from her mother so her mother couldn=t find out, couldn=t
see them.  They had to go shopping far away from the neighborhood so no one
would see them.

 

The State responded with the following argument, leading to
the passage to which appellant objected:

We know 100 percent fact that on March
24th [appellant] was with the victim in the afternoon.  We know that.  It is a
fact in this case.  Bought her tennis shoes at Northwest Mall.  The proof is in
his bank records.  That afternoon he=s
with the victim.  That afternoon he=s
at the Scottish Inn.  Put two and two together.  He=s with the victim buying shoes.  He=s with the victim at the Scottish Inn.  Proof.  It
really does not get better than that for corroboration.








The victim C now, it=s amazing how defense wants to say, AOh, March 9th.  She was at the Scottish Inn, too.@  The defendant says he wasn=t sleeping with anyone else [other than Hernandez]. 
But who knows?  Greatest fear is I know he wasn=t with [N.G.] on March 9th at some Scottish Inn in Houston.  Who was he
with?  It wasn=t Nora [Hernandez].  You know, Nora came up here and
told you, AListen.  Yes, it=s
true.  I took money.  I slept with him.@

No one=s
tried to hide that.  But she said it was always at the Garden Inn.  AI=ve never been
at the Scottish Inn and Suites.  Never.@

So, my question is:  Who is he with at the
Scottish Inn and Suites?  Hope to God it=s
not another child.

 

After appellant objected and the trial court instructed the
jury to disregard the prosecutor=s last comment, the prosecutor
immediately turned to the topic of N.G.=s identification of the room at the
particular Scottish Inn for which the State had introduced the March 24
receipt.  Thus, the comment giving rise to the objection was brief and not
pursued.

We conclude the comment, viewed in context, was not so
extreme as to render ineffective the trial court=s prompt instructions to disregard.  See
Martinez, 17 S.W.3d at 691.  Accordingly, we overrule appellant=s seventh issue.

IV.  Issue Eight:  Psychological Examination of the Complainant

In issue eight, appellant argues the trial court erred in
overruling his request to have a qualified expert perform a psychological
examination of N.G. after the State gave notice N.G.=s therapist was testifying as an
expert witness.  Although appellant filed a motion for such an examination, he
has not directed this court to the trial court=s ruling, if any, on the motion.  To
preserve error, the record must show that appellant made a timely request,
objection, or motion, and that the trial court ruled on it.  Garza v. State,
126 S.W.3d 79, 81B82 (Tex. Crim. App. 2004); see Tex. R. App. P.
33.1(a).








Even if appellant has preserved the error he asserts in issue
eight, his complaint is without merit.  A trial court lacks authority to order
a child witness in a criminal prosecution to undergo a psychological
examination for the purpose of determining credibility, reliability, and
whether the child was fantasizing or was manipulated.  See In re State ex
rel. Robinson, 116 S.W.3d 115, 117B19 (Tex. App.CHouston [14th Dist.] 2002, orig.
proceeding); State ex rel. Holmes v. Lanford, 764 S.W.2d 593 (Tex. App.CHouston [14th Dist.] 1989, orig.
proceeding).

For the foregoing reasons, we overrule appellant=s eighth issue.

V.  Issue Nine:  Factual Sufficiency of the Evidence

In issue nine, appellant argues the evidence was factually
insufficient to prove he committed the offense of aggravated sexual assault of
a child.  A factual sufficiency review begins with the presumption the evidence
is legally sufficient.  Clewis v. State, 922 S.W.2d 126, 134, 136 (Tex.
Crim. App. 1996).[7]  In
evaluating the factual sufficiency of the evidence, we view all the evidence in
a neutral light and will set aside the verdict only to prevent manifest injustice. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We ask (1)
whether the evidence supporting the conviction, although legally sufficient, is
nevertheless so weak the jury=s verdict seems clearly wrong and manifestly unjust, or (2)
whether, considering the conflicting evidence, the jury=s verdict is against the great weight
and preponderance of the evidence.  See Marshall v. State, 210 S.W.3d
618, 625 (Tex. Crim. App. 2006); Watson, 204 S.W.3d at 414B17.  Although a factual sufficiency
review authorizes an appellate court to act in the capacity of a so‑called
Athirteenth juror,@ we must accord due deference to the
fact finder=s determinations, particularly those determinations concerning the weight
and credibility of the evidence.  See Watson, 204 S.W.3d at 416B17.








Appellant does not argue the evidence was factually
insufficient on any of the elements of the offense.  Instead, he argues the
evidence was factually insufficient because there was insufficient
corroborating evidence to link appellant to the crimes with which he was
accused.  Even in the face of an attack on the victim=s credibility, however, the
uncorroborated testimony of a child victim may be factually sufficient to
support a conviction for aggravated sexual assault.  See Newby v. State,
252 S.W.3d 431, 436B37 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).

N.G. testified about the gradual progression of appellant=s sexual conduct with her.  She related
the conduct to specific places she, her family, and appellant had lived.

The conduct with which appellant was charged occurred when
N.G. was ten years old and living at a second apartment at Dover Side.  N.G.
described appellant as Agoing down on,@ and putting Ahis private part in,@ her while they were in her mother=s bedroom.  N.G. described appellant
taking nude photographs of her and described the camera as a Alike a Polaroid.@  N.G. described specific positions
appellant had her assume for the photos.  N.G.=s mother was at work, her brother was
at school, and N.G. had stayed home, saying she had an earache when she really
did not.  N.G. graphically described an incident at the second Dover Side
apartment when appellant had intercourse while her mother was showering.

N.G. also described incidents after the charged conduct.  One
such incident occurred when he took her to the Scottish Inn Motel on the way to
buy the Jordan shoes.  N.G.  testified the room had stars on the walls and
appellant had used a strawberry gel on her.  She subsequently directed the
investigators to the motel.








Appellant, however, points to inconsistencies in N.G.=s accounts and to contradictions
between her testimony and other evidence.  Specifically, he refers to the
following:  N.G.=s testimony appellant=s right index finger tip (the finger
she testified he used to molest her) was missing, but evidence showed his left
thumb as having the tip removed; N.G.=s testimony she slept on the top of a
bunk bed shared with her brother, but she had previously stated she slept on
the bottom bunk; N.G.=s testimony appellant used a condom only once, but she had
previously stated he used condoms Aa lot@; N.G.=s testimony appellant did not clean
up after having ejaculated, but he was otherwise quiet and secretive when being
sexual with her; N.G.=s testimony appellant forced her to stay home from school,
but her school attendance records for those years did not show the same
frequency of absences; N.G.=s description of one of her nude poses, as compared to the
probable anatomy of a ten-year-old; N.G.=s testimony she never told her
therapist she had a sexual relationship with her boyfriend, but  the therapist
testified N.G. had told her about it;  N.G.=s testimony about how many Xanax she
had taken, but she previously stated she took a different amount.

In addition, appellant argues N.G. had potentially two
motives to accuse appellant falsely.  First, she needed to take attention away
from her possession and use of the Xanax.  Second, she and her mother were
angry at appellant for no longer giving them money.  Appellant theorizes N.G.
used details of her mother=s sexual activity with appellant to fabricate her own story.

Appellant, however, overlooks the motel records and bank card
receipts corroborating N.G.=s description of the afternoon he took her to the Scottish
Inn and then to buy tennis shoes.  He also overlooks her ability to anchor the
details of his escalating abuse to specific locations where the abuse
occurred.  Finally, he ignores the implausibility of his own testimony that,
despite living with N.G. and her family from 1992 to 2000, he was never alone
in a room with her.

The jury was in the best position to evaluate the credibility
of the witnesses and the evidence, and we must afford due deference to its
determination.  Newby, 252 S.W.3d at 437 (citing Marshall, 210
S.W.3d at 625).  We hold that the evidence supporting the verdict was not so
weak the verdict was clearly wrong and manifestly unjust and the contrary evidence
was not strong enough that the beyond‑a‑reasonable‑doubt
standard could not have been met.  See id.  Accordingly, we overrule
appellant=s ninth issue.

VI.  Conclusion

Having overruled
appellant=s nine issues, we affirm the trial court=s judgment.

 

 

 

 

 

/s/        Charles W. Seymore

Justice

 

 

Panel consists of Justices Seymore, Brown, and
Sullivan.

Do Not Publish C
Tex. R. App. P. 47.2(b).









[1]  In cause number 14-08-00072-CR (trial court cause
number 1053586), appellant was charged with having oral contact with N.G.=s sexual organ on February 10, 2000.  In cause number
14-08-00073-CR (trial court cause number 1053587), appellant was charged with
penetration of N.G.=s sexual organ on March 1, 2000.





[2]  The chronology of Hernandez=s separation from appellant and her relationship with
another man was developed in part through appellant=s evidence.





[3]   When confronted on cross-examination with a
statement she made on December 6, N.G. testified she was taken from the school
to a police station, and from there to the hospital.





[4] Appellant=s
family and co-workers also testified for the defense.  In general, they
testified to matters pertaining to appellant=s
character and reputation for truthfulness.





[5]  Emphasis added.





[6]  Defense counsel requested to question N.G. about the
fact she had taken Xanax a second time while she was on probation.  The court
denied the request.  Counsel said he would make a bill of exception on the
record, but he does not appear to have done so.





[7]  Because a factual sufficiency review begins with the
presumption the evidence supporting the jury=s
verdict is legally sufficient, and because appellant challenges only the
factual sufficiency of the evidence, appellant effectively concedes the
evidence is legally sufficient to sustain his conviction.  Newby v. State,
252 S.W.3d 431, 435 n.1 (Tex. App.CHouston
[14th Dist.] 2008, pet. ref=d); see
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).